**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CATHERINE PERO, individually and on behalf of all others similarly situated** | : : : | **CIVIL ACTION** |
| **v.** | : : | |
| **BROWN-DAUB CHEVROLET OF NAZARETH** | : : | **NO. 25-7016** |

**<u>MEMORANDUM OPINION</u>**

**Savage, J.**                                                                                    **June 17, 2026**

The threshold issue in this case is whether a text message is a "telephone call" for purposes of Section 227(c) of the Telephone Consumer Protection Act (TCPA), which prohibits telephone solicitations to numbers on the National Do Not Call Registry (DNCR). Considering the statutory language and the Federal Communications Commission's (FCC) regulations and interpretations, we conclude that text messages are calls for purposes of Section 227(c) of the TCPA.

Plaintiff Catherine Pero brought this putative class action against defendant Brown-Daub Chevrolet of Nazareth for violating Section 227(c) of the TCPA.[1]  Pero alleges she received multiple unwanted text messages from Brown-Daub on her cell phone number which was registered on the DNCR.  Brown-Daub moves to dismiss, arguing that the TCPA regulates telephone calls and not text messages.

---

[1] Section 227(c)(5) provides a private right of action for a person who "has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed[.]"  47 U.S.C.A. § 227(c)(5).

**Factual Background**

In 2021, Pero registered her phone number with the DNCR, a national list of persons who do not want to receive unsolicited telemarketing messages.[2]  In October 2024, Pero gave Brown-Daub her number to receive information about trucks for sale.[3]  She later opted out of receiving texts.[4]  After Brown-Daub had initially confirmed that she was unsubscribed,[5] a Brown-Daub employee overrode her opt-out request.[6]  She received six unwanted texts from January 8, 2025 to March 28, 2025,[7] and an additional two undated texts.[8]

Pero claims a text message alerts and disturbs her.[9]  Additionally, she contends the texts are an ongoing nuisance, an invasion of her privacy, and a distraction.[10]  Pero claims the texts violated Section 227(c) of the TCPA.

**Analysis**

The FCC includes text messages within the ambit of prohibited telephone communications.  For years, applying *Chevron* deference, which directed courts to defer to an agency's interpretation of a statute, courts relied on the FCC's determination that

---

[2] Compl. ¶¶ 12–13, ECF No. 1.

[3] *Id.* ¶ 14.

[4] *Id.* ¶ 16.

[5] *Id.* ¶ 17.

[6] *Id.* ¶ 19.

[7] *Id.* ¶¶ 19, 21–24.

[8] *Id.* ¶ 25.

[9] *Id.* ¶ 26.

[10] *Id.*

text messages were calls for purposes of the TCPA.

*Chevron* deference has been abolished.  *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024).  When conducting statutory interpretation, courts are no longer obligated to defer to an agency's interpretation.  *Id.* at 413.  Instead, they must exercise their independent judgment.  *Id.* at 412.

Although they are no longer bound by an agency's interpretation, courts must respect it.  *Id.* at 394.  Courts may still consider an agency's interpretations because those interpretations are the product of a "body of experience and informed judgment."  *Id.* at 394 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).  This is especially true where, as here, Congress explicitly directs an agency to implement the goals of the statute.  *See id.* at 413 ("[W]hen a particular statute delegates authority to an agency consistent with constitutional limits, courts must respect the delegation, while ensuring that the agency acts within it.").

In *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, a case where the FCC interpretated the TCPA's definition of "telephone facsimile machine", the Supreme Court instructed district courts to use ordinary principles of traditional statutory interpretation when deciding civil enforcement proceedings.  606 U.S. 146, 168 (2025).  Where an agency has interpretated a statute, district courts should give it appropriate respect, but they are not bound by it and need not interpret the statute the same way.  *Id.*

Guided by these principles, we now decide whether a text message solicitation to a number on the DNCR violates the TCPA.  We begin with statutory construction.

Statutory Language

When interpreting a statute, we start with the text itself, giving ordinary words their

ordinary meaning.  *Artis v. District of Columbia*, 583 U.S. 71, 83 (2018) (quoting *Moskal v. United States*, 498 U.S. 103, 108 (1990)).  The words of a statute are interpreted in accordance with their ordinary meaning at the time of the statute's enactment.  *Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 284 (2018) (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)).

Text messages did not exist when the TCPA was enacted.[11]  Congress could not have contemplated text messages when it passed the TCPA.  But, Congress intended to prohibit more than solicitations by telephone.  It also included communications "by message."  Clearly, the prohibition was not limited to telephone calls.

Section 227(a)(4) defines telephone solicitation as the "initiation of a telephone call or *message* for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person."  47 U.S.C.A. § 227(a)(4) (emphasis added).

The telephone solicitation definition does not include text messages specifically.  But, it is not limited to a telephone call.  It includes solicitation by message.  Congress intended to prohibit intrusive and unwanted contacts using a telephone line.

The TCPA does not define "telephone call or message."  So, we must examine its meaning as it was commonly and ordinarily used when Congress enacted the statute in 1991.  *Wis. Cent. Ltd.*, 585 U.S. at 284.  When the TCPA was enacted, "telephone" was defined as "[a]n instrument, apparatus, or device for conveying sound to a distance."[12]  A

---

[11] The first text message was sent on December 3, 1992.  *This Day in History*, History.com (https://www.history.com/this-day-in-history/december-3/first-sms-text-message-sent) (last visited June 12, 2026).

[12] *Telephone*, Oxford English Dictionary (1989), https://www.oed.com/oedv2/00248465 (last visited June 12, 2026).

"call" meant "[a] summons or communication by telephone; a telephone conversation."[13] "Message" was defined as "[a] communication transmitted through a messenger or other agency; an oral or written communication sent from one person to another."[14]

A text message is a communication (message) transmitted by a telephone (an agency).  Thus, it is a "message" within the scope of the TCPA's prohibition of unwanted telephone solicitations.

<u>FCC Interpretation of Sections 227(c) and (b)</u>

Congress directed the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object" and to "prescribe regulations" to protect their privacy rights.  47 U.S.C.A. §§ 227(c)(1)–(2).

There is no doubt that Congress delegated broad power to the FCC to implement Congress's goal to protect telephone subscribers from intrusive and unwanted telephone calls and messages.  The FCC did not intrude on Congressional prerogative or exceed its mandate.  Thus, we accord its interpretation considerable weight in our analysis.

The FCC codified its DNCR regulations in 47 C.F.R. § 64.1200, titled "Delivery Restrictions."  The regulations provide that no person or entity shall initiate any telephone solicitation to a residential telephone subscriber registered with the DNCR.  47 C.F.R. § 64.1200(c)(2).  A "do not call" registration must be honored either indefinitely, until the

---

[13] *Call*, Oxford English Dictionary (1989), https://www.oed.com/oedv2/00031625 (last visited June 12, 2026).

[14] *Message*, Oxford English Dictionary (1989), https://www.oed.com/oedv2/00144966 (last visited June 12, 2026).

registration is canceled by the consumer, or until the phone number is removed by the database administrator.  *Id.*  A person making telephone solicitations is not liable if they can demonstrate the violation was an error and they have routine business practices for complying with the DNCR.  *Id.* § 64.1200(c)(2)(i)(A)–(E).

The FCC has clarified that the DNCR's protections extend to text messages.  In *Targeting and Eliminating Unlawful Text Messages, Implementation of the Telephone Consumer Protection Act of 1991, Advanced Methods to Target and Eliminate Unlawful Robocalls*, the FCC "codifie[d] that the National Do-Not-Call (DNC) Registry's protections extend to text messages."  89 FR 5098-01, 2024 WL 283571 (F.R.), 5098 (Jan. 26, 2024). It warned that "[t]exters must have the consumer's prior express invitation or permission before sending a marketing text to a wireless number in the DNC Registry."  *Id.* at 5099. The Commission explained that the regulation was consistent with court opinions and would "both deter illegal texts and make DNC enforcement easier."  *Id.*  Additionally, the FCC has explicitly ruled that sending text messages can violate the DNCR provisions of the TCPA.  *In The Matter of Emanuel "Manny" Hernandez; Click Cash Mktg., LLC; and Rock Solid Traffic*, No. DA 18-1291, 2018 WL 6830220 at *1 (F.C.C. Dec. 21, 2018).

In 2024, the FCC amended the regulations to clarify that Section 227(c) applies to any person or entity making telephone solicitations or telemarketing calls or text messages as described in the specific regulations cited above.  47 C.F.R. § 64.1200(e); 89 FR 5104 (Jan. 26, 2024).

The FCC has included a text in the definition of a "telephone call" in regulations implementing other TCPA sections.  In a regulation interpretating Section 227(b) of the TCPA, the FCC explained that the TCPA's prohibition on making calls using an autodialer

"encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls, provided the call is made to a telephone number assigned to such service."  *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd. 14014, 14115 (2003).

The Supreme Court and lower courts have acknowledged this interpretation and have not rejected it.  See *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 615 n.1 (2020) (identifying the regulation as an example of the robocall restriction barring both automated voice calls and text messages); *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 874 (9th Cir. 2014), *aff'd*, 577 U.S. 153 (2016); *Satterfield v. Simon and Shuster, Inc.*, 569 F. 3d 946, 952 (9th Cir. 2008).

The FCC issued a ruling in 2012 where it considered whether a confirmation text violated the TCPA automatic dialing system prohibitions.  *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, SoundBite Communications, Inc. Petition for Expedited Declaratory Ruling*, 27 F.C.C. Rcd. 15391, 15392 (2012) ("*SoundBite* decision").  The Commission noted it "had concluded that the TCPA's prohibition on autodialers encompasses both voice and text calls, including short message service (SMS) calls," citing its 2003 regulation.  *Id.*

Although this interpretation applies to Section 227(b), it shows the FCC has determined that a "text message" is a "telephone call" for purposes of the TCPA.  The same phrases are included in both Sections 227(b) and (c), so we presume they have the same meaning and will conclude the interpretation applies to both sections.  *See Pereira v. Sessions*, 585 U.S. 198, 211 (2018) (quoting *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 571 (2012)); *Cellco P'ship v. White Deer Twp. Zoning Hearing Bd.*, 74 F.4th 96,

7

105 (3d Cir. 2023).

When evaluating Section 227(b), the Third Circuit held that the TCPA's prohibitions on using automatic dialing systems included text messages. *Gager v. Dell Fin. Servs., L.L.C.*, 727 F.3d 265, 269 n.2 (3d Cir. 2013). In a footnote, the Court approvingly cited the FCC's *Soundbite* decision and the Ninth Circuit's *Satterfield* decision. *Id.* However, *Gager* predated *McLaughlin* and *Loper Bright*. It was decided before *Chevron* deference was abolished. The Third Circuit has not yet considered the issue applying statutory interpretation principles post-*Chevron*.

Six Circuits have determined that a text is a call. *See Breda v. Cellco P'ship*, 934 F.3d 1, 4 n.1 (1st Cir. 2019); *Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 690 (5th Cir. 2021); *Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 370 (6th Cir. 2015); *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 463 (7th Cir. 2020); *Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983, 986 (9th Cir. 2023); *Insurance Marketing Coalition Ltd. v. Fed. Commc'ns Comm'n*, 127 F.4th 303, 307 n.2 (11th Cir. 2025).

All but one of these cases were decided while *Chevron* was alive. They all predated *McLaughlin*. Additionally, the *Breda, Cranor*, *Keating*, *Gadelhak*, and *Insurance Marketing Coalition* cases analyzed Section 227(b), not Section 227(c). Nevertheless, their reasoning is persuasive.

*Hall*, decided post-*Chevron*, considered whether the plaintiff who had received unwanted text messages had standing to bring an action under Section 227(c). The Ninth Circuit held that the owner and subscriber of a phone number on the DNCR suffered an injury-in-fact for Article III purposes when unsolicited telemarketing calls or text messages

8

were sent to the number. *Hall*, 72 F. 4th at 985–986.

District courts addressing this issue after *McLaughlin* have held that a text is a call for purposes of Section 227(c). *See Wilson v. MEDVIDI INC.*, 5:25-cv-03996, 2025 WL 2856295, at *1, *4 (N.D. Cal. Oct. 7, 2025) ("nothing in the text, structure, or purpose of the TCPA suggests [a] distinction between written and oral communications"); *Bosley v. A Bradley Hosp. LLC*, 25-cv-22336, 2025 WL 2686984, at *1, *5 (S.D. Fl. Sep. 19, 2025) ("a text message constitutes a 'call' under the TCPA"); *Wilson v. Skopos Fin., LLC*, 6:25-cv-00376-MC, 2025 WL 2029274, at *1, *4 (D. Or. July 21, 2025) ("It cannot be argued in good faith that text messages are so categorically different from phone calls that the former cannot be considered an invasion of consumer privacy when directed at numbers on the DNC Registry"); *Duron v. Kings Cap. Holding LLC*, 3:25-cv-00149-DCG, 2026 WL 319779, at *1, *6 (W.D. Tex. Jan. 13, 2026) ("the Court's interpretation aligns with the weight of authority, confirming that text messages are actionable under § 227(c)(5)").

Courts in this district have held that a text is a call for purposes of Section 227(c). *See e.g., Newell v. Children's Dental Health Assocs., LLC*, Civil Action No. 25-5238, 2026 WL 927378, at *1, *9 (E.D. Pa. Apr. 6, 2026) (Murphy, J.) ("We agree with the FCC and many courts that have considered the question that the statutory language 'calls' includes text messages"); *Cole v. C/T Install America, LLC*, Civil Action No. 25-3531, 2026 WL 916582, at *1 n.1 (E.D. Pa. March 23, 2026) (Henry, J.) ("[N]othing in the text, structure, or purpose of the TCPA suggests the barring of text messages under § 227(c)…[the Court] conclude[s] that § 227(c) includes text messages within its definition of a 'telephone call.'").

**Conclusion**

Considering the statutory language, the FCC regulations, and the decisions of an overwhelming majority of courts, we hold that a text message is a call for purposes of 47 U.S.C. § 227(c). Thus, we will deny Pero's motion to dismiss.